Merrimack
No. 92-064

BEVERLY N. GARDNER

v.

CITY OF CONCORD

March 11, 1993
(Modified on reconsideration, May 24, 1993)

*Rinden Professional Association*, of Concord (*Paul A. Rinden* on the brief and orally), for the plaintiff.

*Cleveland, Waters and Bass, P.A.*, of Concord (*Thomas F. Kehr* and *Craig L. Staples* on the brief, and *Mr. Kehr* orally), for the defendant.

BROCK, C.J.   The plaintiff, Beverly N. Gardner, appeals the decision of the Superior Court (*Dickson,* J.), dismissing her action

against the City of Concord (city). She argues that the trial court erred by ruling that the city was immune from liability under the discretionary function exception to the abrogation of municipal immunity. Because not all of the acts or omissions alleged as negligent necessarily implicate discretionary functions, we reverse and remand.

On December 1, 1988, the plaintiff sustained personal injuries when she fell on a sidewalk on Depot Street in Concord. The plaintiff sued the city in negligence arguing that city workers created a hazardous condition on the sidewalk that caused her to fall and injure herself. In her writ, she alleged that the city negligently (1) constructed a declivity in the sidewalk to accommodate vehicular traffic to an alleyway that created a trap to pedestrian traffic; (2) failed to fill in the declivity after the alleyway was blocked off; (3) established a parking space that obscured the declivity in the sidewalk; (4) failed to adequately light the area; (5) made the curb area the same color and texture as the rest of the sidewalk; and (6) failed to otherwise warn of the hazard. Further, she alleged that the city knew of the hazardous condition that was described in the writ.

The city filed a motion to dismiss arguing, among other things, that the plaintiff's claims were barred by the discretionary function exception to the abrogation of municipal immunity as set forth in *Merrill v. City of Manchester*, 114 N.H. 722, 332 A.2d 378 (1974). Relying on *Rockhouse Mountain Property Owners Ass'n v. Town of Conway*, 127 N.H. 593, 599–600, 503 A.2d 1385, 1389 (1986) (*Merrill* immunity barred claim against the town for its refusal to lay out a roadway), and *Hurley v. Hudson*, 112 N.H. 365, 369, 296 A.2d 905, 907 (1972) (planning board's approval of subdivision plan was discretionary function for which city could not be held liable), the trial court granted the motion to dismiss, ruling:

> "Like decisions regarding approval of a subdivision plan or the laying out of roadways, a municipality's decisions with regard to the design of a sidewalk and placement of street lights and parking spaces obviously involve the exercise of a high degree of discretion. . . .
>
> The Court finds that the plaintiff's claims implicate the type of discretioary [*sic*] responsibilities to which *Merrill* immunity applies."

The trial court denied the plaintiff's motion for reconsideration, and this appeal followed.

■  In reviewing a motion to dismiss on appeal, we ask whether "the plaintiff's allegations are reasonably susceptible of a construc-

tion that would permit recovery." *LaRoche, Adm'r v. Doe*, 134 N.H. 562, 564, 594 A.2d 1297, 1299 (1991). For the purposes of review, we accept as true the plaintiff's allegations of fact, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss. *Id.* However, we need not accept allegations in the writ that are merely conclusions of law. *Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 45, 534 A.2d 706, 708 (1987).

In *Merrill v. City of Manchester*, 114 N.H. 722, 332 A.2d 378, we abrogated the judicially created doctrine of municipal immunity, finding that there was "no supportable rationale upon which this judicially created exception to the ordinary rules of liability [could] be predicated." *Id.* at 729, 332 A.2d at 383. We held that cities and towns are, with certain exceptions, "subject to the same rules as private corporations if a duty has been violated and a tort committed." *Id.* at 730, 332 A.2d at 383. The conduct for which cities and towns remain immune from liability involves "(a) the exercise of a legislative or judicial function, and (b) the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Id.* at 729, 332 A.2d at 383; *see City of Dover v. Imperial Cas. & Indemn. Co.*, 133 N.H. 109, 115, 575 A.2d 1280, 1283 (1990) ("Municipalities continue to enjoy limited protection from tort actions when the injury is the result of the exercise of a legislative or judicial function, or a planning function involving a basic policy decision that is characterized by a high degree of official judgment or discretion.").

■ The existence of municipal immunity for discretionary functions is fundamental to our system of separation of powers. *See Sorenson v. City of Manchester*, 136 N.H. 692, 693–94, 521 A.2d 438, 439 (1993). "[T]o accept a jury's verdict as to the reasonableness and safety of a plan of governmental services and prefer it over the judgment of the governmental body which originally considered and passed on the matter would be to obstruct normal governmental operations. . . ." 18 E. McQuillin, The Law of Municipal Corporations § 53.04a, at 158 (3d ed. rev. 1984).

The question before us is whether the acts alleged by the plaintiff fall within the discretionary function exception, thereby immunizing the city from liability. The plaintiff argues that the city does not enjoy immunity because the acts alleged are ministerial in nature. The city argues, on the other hand, that it is immune from liability because the acts and omissions of which the plaintiff complains implicate discretionary functions.

Although the line between ministerial and planning or discretionary functions is sometimes blurred, we have adopted the following test to distinguish the different types of functions:

> "When the particular conduct which caused the injury is one characterized by the high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning, governmental entities should remain immune from liability."

*Opinion of the Justices*, 126 N.H. 554, 563, 493 A.2d 1182, 1189 (1985) (quotation omitted).

We have held that the following conduct qualifies for immunity under the discretionary function exception: a planning board's approval of a subdivision plan without adequate drainage, *Hurley v. Hudson*, 112 N.H. at 369, 296 A.2d at 907; a town selectmen's decision not to lay out certain roads, *Rockhouse Mt. Property Owners Assoc.*, 127 N.H. at 600, 503 A.2d at 1389; and traffic control and parking regulations, *Sorenson v. City of Manchester*, 136 N.H. at 694, 621 A.2d at 439–40. We have also analyzed discretionary function immunity as it applies to the State's limited waiver of sovereign immunity. *See DiFruscia v. N.H. Dept. of Public Works*, 136 N.H. 202, 205, 612 A.2d 1326, 1328–29 (1992) (although the decision whether or where to place a guardrail on a State highway falls within discretionary immunity, the failure of a State worker to install a specified guardrail is not immune from tort liability); *see also* RSA 541-B:19, I(c) (Supp. 1992).

It is widely accepted among other jurisdictions that municipalities are immune from tort liability for conduct that involves discretionary acts or omissions. MCQUILLIN, *supra* § 53.22a, at 157–58. Nonetheless, differences arise as to when discretionary responsibilities end and ministerial duties begin. Some jurisdictions hold that while all planning decisions are discretionary, and thus immune from liability, all operational-level conduct is ministerial, and thus subject to potential tort liability. *See City of Bloomington v. Kuruzovich*, 517 N.E.2d 408, 415 (Ind. Ct. App. 1987) (the decision to put in a ballfield in a municipal park was discretionary, but the subsequent design and maintenance decisions were ministerial); *Harrigan v. City of Reno*, 86 Nev. 678, 681, 475 P.2d 94, 96 (1970) ("While whether or not to put in a parking lot is a policy decision, the rules of safety cannot be ignored by the government once the affirmative act of construction is undertaken. In this case, because the negligent conduct of omitting danger signs and guardrails was part of the operational phase, it is actionable.").

We refuse to adopt a rule that automatically would make a municipality liable for torts that result from the actions of those who carry out a plan. It is possible for workers to implement a faulty design or plan, for which no tort liability should result. *See Rockhouse Mt. Property Owners Assoc.*, 127 N.H. at 599–600, 503 A.2d at 1389. If, on the other hand, workers negligently follow or fail to follow an established plan or standards, and injuries result, then a municipality could be subject to tort liability. *See Cannata v. Town of Deerfield*, 132 N.H. 235, 242, 566 A.2d 162, 166 (1989).

The decision to place or subsequently abandon an alleyway on a certain street in a certain place is "precisely the type of 'discretionary' . . . decision which should not subject a town to potential liability in tort." *Hurley*, 112 N.H. at 369, 296 A.2d at 907; *see Rockhouse Mt. Property Owners Assoc.*, 127 N.H. at 599–600, 503 A.2d at 1389. Further, the plaintiff cannot challenge the city planners' decision where to place public lighting and public parking spaces. *See Sorenson*, 136 N.H. at 694, 621 A.2d at 439–40. These are the types of decisions that involve the exercise of an executive or planning function, characterized by a high degree of official judgment or discretion.

We cannot say on the record before us, however, that the actual construction of the declivity or curb in the sidewalk, and the failure to level the sidewalk after the alleyway had been blocked off, necessarily involved public policy or the planning function. *See Opinion of the Justices*, 126 N.H. at 563, 493 A.2d at 1189; *DiFruscia*, 136 N.H. at 205, 612 A.2d at 1328. If the city workers merely followed orders from a higher source when they initially constructed the curb, blocked off the alleyway, and subsequently failed to level or improve the sidewalk, there can be no liability, regardless of the soundness of the plans or standards that were followed. *See Cannata*, 132 N.H. at 241, 566 A.2d at 166; *Rockhouse Mt. Property Owners Assoc.*, 127 N.H. at 599–600, 503 A.2d at 1389. "The setting of road maintenance standards [is] a discretionary, policy function for which the municipality shall not be held liable" absent bad faith or malice. *Opinion of the Justices*, 134 N.H. 266, 278–79, 592 A.2d 180, 187 (1991) (quotation omitted). If, however, city workers negligently followed or failed to follow an established plan, standards or orders when they constructed and subsequently modified the sidewalk, or merely carried out these tasks absent a higher-level plan, design, or standards, the city could be held liable in tort for resultant injuries. *See Cannata*, 132 N.H. at 242, 566 A.2d at 166. To permit liability under those circumstances would not infringe on the exercise of an executive or

planning function that involves a "high degree of official judgment or discretion." *Merrill*, 114 N.H. at 729, 332 A.2d at 383; *see Opinion of the Justices*, 126 N.H. at 563, 493 A.2d at 1189.

The plaintiff did not allege in her writ that the city workers followed orders according to a set design or plan when they initially constructed the sidewalk and subsequently failed to level the sidewalk after the alleyway had been blocked off. Instead, she argued, among other things, that the workers were negligent in constructing this specific sidewalk hazard. At the hearing on the motion to dismiss, plaintiff's counsel argued that the acts were "strictly something that was done by the work crew" and "had nothing to do with general planning . . . and we're not claiming that the City was at fault for failing to adopt standards. If they had gone by their normal standards, that would have been the problem." Both in its motion to dismiss and at the hearing, the city argued that all of the purportedly negligent acts implicated plans and designs by city planners and engineers, and thus should be immune from liability under the discretionary function exception. The city, however, failed to offer evidence of any specific designs, standards, or engineering data that the city workers followed when conducting the purportedly negligent work.

■ It is not apparent from the record whether the construction of the declivity or curb and the decision not to level the sidewalk were the result of discretionary or ministerial functions. This determination is based upon facts that were not sufficiently developed below. The court below "will not hear any motion grounded upon facts, unless they are verified by affidavit, or are apparent from the record or from the papers on file in the case, or are agreed to and stated in writing." SUPER. CT. R. 57. Because it is not apparent from the record whether certain of the alleged municipal acts were discretionary or ministerial in nature, it was incumbent upon the moving party, the city in this case, to supply the court with facts verified by affidavit to support its motion to dismiss. *Id.*; *see Leeman v. Boylan*, 134 N.H. 230, 234, 590 A.2d 610, 612–13 (1991) (a corporation had to plead specific evidence to support its argument that it was the plaintiff's employer and thus immune from tort liability under the workers' compensation statute).

■ Taking the allegations of fact in the light most favorable to the plaintiff, *LaRoche*, 134 N.H. at 564, 594 A.2d at 1299, we find that the plaintiff's writ alleges negligent acts by city workers that may not be shielded by discretionary function immunity. Thus, the plaintiff has sufficiently pleaded her case to survive a motion to dismiss.

If, on remand, the city is able to offer evidence supporting its allegations that the workers' conduct conformed to a specific plan, standards, or higher-level orders, the city may make any appropriate motions to further its position.

■ ■ The city also contends that the plaintiff is barred from suing because she failed to allege that the city had actual notice of any defect in the sidewalk. The trial court did not reach this issue. Nevertheless, the city invites us to decide the issue in the city's favor, thereby allowing us to sustain the trial court's decision even though it was based on mistaken grounds. *See In re Trailer and Plumbing Supplies*, 133 N.H. 432, 438, 578 A.2d 343, 346 (1990). We decline the city's invitation. Even assuming, without deciding, both that the plaintiff was required, and failed, to allege that the city had actual notice of the defect, we would not affirm the dismissal of this case. A plaintiff should generally be given the opportunity to amend the writ to correct perceived deficiencies before a motion to dismiss is granted. *See Erg, Inc. v. Barnes*, 137 N.H. 186, 624 A.2d 555 (1993). Under the circumstances of this case, we would not affirm the dismissal even if we agreed that the writ was defective. Because we remand this case for further proceedings, we leave for the trial court the question of whether plaintiff's writ should be dismissed for failure to allege actual notice.

For the reasons stated, we reverse the superior court's granting of the defendant's motion to dismiss and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*

All concurred.