Belknap
No. 92-747

CARMEN DOUCETTE, ADMINISTRATRIX OF THE ESTATE OF
ROBIN LEE REYNOLDS

v.

TOWN OF BRISTOL & a.

December 30, 1993

*Nighswander, Martin & Mitchell, P.A.*, of Laconia (*Charles V. Moser* on the brief, and *David S. Osman* orally), for the plaintiffs.

*Upton, Sanders & Smith*, of Concord (*Barton L. Mayer* on the brief and orally), for defendant Town of Bristol, and *Cleveland, Waters and Bass, P.A.*, of Concord (*Wayne C. Beyer* and *Mark D. Wiseman* on the brief, and *Mr. Beyer* orally), for defendant Town of Plymouth.

BROCK, C.J. The defendants, the Town of Bristol (Bristol) and the Town of Plymouth (Plymouth), bring this interlocutory appeal to resolve issues of municipal tort liability raised by the Superior Court (*McHugh*, J.) in reconsidering its order denying defendants' motions to dismiss. The following questions have been transferred to us:

"1. In an action alleging that police failed to protect a person from the violence of a third party, must the plaintiff allege and prove either a statutory duty on the part of the police, or a special duty/special relationship between the police and the victim?

2. Is the special duty/special relationship test, as recognized by the New Hampshire Supreme Court in *Hartman v. Hooksett*, 125 N.H. 34 (1984) and *Weldy v. Town of Kingston*, 128 N.H. 325 (1986), affected by the erosion of sovereign immunity in *Merrill v. Manchester*, 114 N.H. 722 (1974) and *City of Dover v. Imperial Casualty and Indemnity Company*, 133 N.H. 109 (1990)?

3. Assuming the Supreme Court continues to recognize a special duty/special relationship requirement, what elements must the plaintiff allege and prove in a police failure-to-protect case in order to prevail on the claim?

4. Assuming the continued validity of the special duty/special relationship test, has the plaintiff herein alleged sufficient facts to overcome the defendants' motion to dismiss?"

We answer that the special duty/special relationship test, as stated in *Hartman v. Town of Hooksett supra*, and known as the public duty rule, conflicts with the abrogation of common law municipal immunity. Therefore, the rule is no longer viable in this State. We need not address the particular facts of this case in light of our decision.

We have recently reviewed New Hampshire law on municipal liability and immunity, and we will not repeat the history here. *See Schoff v. City of Somersworth*, 137 N.H. 583, 585–87, 630 A.2d 783, 784–85 (1993); *City of Dover v. Imperial Cas. & Indemn. Co.*, 133 N.H. 109, 112–15, 575 A.2d 1280, 1282–83 (1990). In summary, nineteen years ago we abolished common law municipal immunity excepting the exercise of legislative or judicial functions and executive or planning functions. *Merrill v. City of Manchester*, 114 N.H. 722, 729, 332 A.2d 378, 383 (1974). Subsequently, the law of municipal liability and immunity has evolved in "a patchwork of judicial decisions and statutory enactments." *Schoff*, 137 N.H. at 585, 603 A.2d at 784. Recently, we concluded that "municipal immunity, as a judicially created doctrine, no longer exists." *City of Dover*, 133 N.H. at 115, 575 A.2d at 1283.

Although the public duty rule has been addressed in New Hampshire cases involving municipal tort liability, the rule has never served as the controlling principle in a decision of this court. The rule first appeared in New Hampshire in *Hartman v. Town of Hooksett*, 125 N.H. 34, 480 A.2d 12 (1984). In *Hartman*, the plaintiff asserted that the town police, as conservators of the peace, had a duty to warn the public of a defect in a State highway that caused an automobile accident in which the plaintiff was injured. We quoted the public duty rule promulgated in *Warren v. District of Columbia*, 444 A.2d 1 (D.C. App. 1981) as follows:

"To sustain liability against a municipality or its servants, the duty breached must be more than a duty owing to the general public. There must exist a special relationship between the municipality and the plaintiff, resulting in the creation of a duty to use due care for the benefit of particular persons or classes of persons."

*Hartman*, 125 N.H. at 36, 480 A.2d at 13 (citations omitted). We acknowledged that "[i]n certain circumstances, a town may be liable for injuries occurring on roads under its control, but not for injuries on roads over which it exercises no control." *Id.* at 37, 480 A.2d at 14. Because the road where the accident occurred was a State highway rather than a town road, the town owed no duty to the general public or the plaintiff to warn of defects on that road. In addition, there were no allegations "to indicate that either the police or the town voluntarily assumed a duty to the general public or to the plaintiff to warn of defects in State highways." *Id.* Having found no duty, public or special, we did not reach the public duty rule analysis. Therefore, although the public duty rule was introduced in *Hartman*, the rule was not necessary to our holding.

Two years after *Hartman*, in *Weldy v. Town of Kingston*, 128 N.H. 325, 514 A.2d 1257 (1986), we again considered the elements of a negligence claim against a town for the negligence of its police. *Weldy* involved the actions of Kingston police officers after stopping a car containing teenagers, including the plaintiffs, who had been drinking alcohol. Following town police policy, the officers confiscated the alcohol, took identification from the driver and one passenger, told the driver that the department of motor vehicles would be notified of their illegal transportation of alcohol, and allowed the group to leave in the car. Later that evening, following more drinking by the teenagers, the car crashed, injuring or killing the plaintiffs. A majority of the court held that RSA 180:2 required police to arrest teenagers discovered illegally transporting alcohol, and that "[t]he failure of the Kingston police officers to do so was a breach of the statutory duty of care." *Id.* at 331, 514 A.2d at 1260. Although the statute provided a legally sufficient duty, the court also found a common law duty based upon police obligations to the general public:

> "Moreover, we believe that, regardless of any statutory duty, action in accordance with the town's policy was a violation of the common law duty of due care. Police officers are obligated to protect the general public, and reasonable prudence dictates that teenagers illegally transporting alcohol be detained."

*Id.* The public duty rule played no part in our analysis or holding.

The plaintiff raised the public duty rule in *Island Shores Estates Condominium Assoc. v. City of Concord*, 136 N.H. 300, 615 A.2d 629 (1992), requesting that we reject the rule in order to preserve the cause of action. The plaintiff alleged negligence by Concord's Code Enforcement Department in failing to detect a myriad of flaws in

condominium units and in issuing certificates of occupancy. The units were later sold to members of the plaintiff association, and the inadequacies of the units soon caused their owners "resultant harm." We declined the plaintiff's request to reject the public duty rule, again finding that no duty existed:

> "The public duty debate is an interesting one, but a duty must exist before we reach the question of whether it is a public duty or a private duty. We do not reach any issues involving the public duty rule because we find the defendant had no duty to protect the plaintiff."

*Id.* at 304, 615 A.2d at 631. We concluded that the plaintiff's "private business considerations are unrelated to the purpose of the municipality's inspection, which must remain focused on setting and enforcing sufficient standards to ensure the safety of structures." *Id.* at 307, 615 A.2d at 633. We affirmed dismissal of the plaintiff's claims. Although the special concurrence took the position that the case could have been decided under the public duty rule doctrine, the decision of the court did not reach that issue.

Finally and most recently, in *Schoff v. City of Somersworth*, we found that the plaintiffs had alleged a duty owed to them by the city based on RSA 231:92 (1982), which "permits suit for a municipality's failure 'to install sufficient signage and guardrails in areas of dangerous embankments.'" *Schoff*, 137 N.H. at 588, 630 A.2d at 786 (1993) (quoting RSA 231:92 (1982)). Had the plaintiffs' suit relied solely on RSA 231:2 (1982), which "is simply a general control and maintenance statute, . . . and as such does not create a duty on municipalities to maintain highways for the benefit of individual travelers," it would have been barred by the public duty rule. *Id.* Once again, however, our decision rested upon a statutory duty, and the public duty rule was not essential to our analysis or holding.

We have not addressed the public duty rule in the context of tort claims against the State, relying instead on principles of ordinary negligence. *See, e.g., Caliri v. N.H. Dept. of Transportation*, 136 N.H. 606, 620 A.2d 1028 (1993). Therefore, a State employee may incur liability for the State based on the negligent performance of a public duty while a municipal employee and the municipality would enjoy the protection of the public duty rule. Different treatment of State and municipal tort claims is not entirely explained by the difference in the immune status of the entities. We have noted the significant legal difference between the doctrine of sovereign immunity and the "judge-made rule of municipal immunity," which we have abolished. *LaRoche, Adm'r v. Doe*, 134 N.H. 562, 567, 594 A.2d 1297,

1301 (1991); *Sousa v. State*, 115 N.H. 340, 345, 341 A.2d 282, 285–86 (1975). Although we have preserved sovereign immunity as to the State, the State has partially waived its immunity by statute. *See* RSA 541-B:14 (Supp. 1992). To the extent that sovereign immunity is waived, the State stands in a position similar to municipalities for potential liability, except for the possible protection of the public duty rule. *See, e.g.*, RSA 541-B:19 (Supp. 1992).

Because we have not made a decision based upon the public duty rule, our cases do not demonstrate the effects of the rule. Courts in other jurisdictions have found that the public duty rule and its exceptions cause legal confusion, tortured analyses, and inequitable results in practice. *See, e.g., Leake v. Cain*, 720 P.2d 152, 159 (Colo. 1986); *Jean W. v. Commonwealth*, 414 Mass. 496, 499, 610 N.E.2d 305, 307 (1993); *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 540, 247 N.W.2d 132, 139 (1976). Several courts have recognized that the public duty rule unfairly restricts the concept of municipal duty so that a duty owed to all becomes a duty owed to none. *See Commercial Carrier Corp. v. Indian River County*, 371 So. 2d 1010, 1015 (Fla. 1979); *Fowler v. Roberts*, 556 So. 2d 1, 7 (La. 1989); *Jean W. v. Commonwealth*, 414 Mass. at 509, 610 N.E.2d at 313.

In the present case, we are asked to examine the relationship between the public duty rule and abrogation of municipal immunity. As described in our previous decisions, the public duty rule offers a complete defense to allegations of municipal negligence if the duty alleged to have been violated was owed to the general public rather than to the plaintiff individually or as a member of a group. The status of a municipal defendant, therefore, restricts the duty owed while private actors and State actors, who also may incur broad obligations, are not given the same protections. The protection provided by the public duty rule has been described as "a limitation on liability" and as rendering a municipality "immune from liability." *Island Shores Estates*, 136 N.H. at 303, 309, 615 A.2d at 631, 634. Consequently, we hold that the public duty rule impermissibly conflicts with the abrogation of common law municipal immunity in this State, and, therefore, will no longer be a recognized defense against claims of municipal negligence. Our decision is consonant with decisions in other jurisdictions that have found the public duty rule to be inconsistent with abolition of common law immunity. *See, e.g., Adams v. State*, 555 P.2d 235, 244 (Alaska 1976); *Ryan v. State*, 134 Ariz. 308, 310, 656 P.2d 597, 598 (1982); *Leake v. Cain*, 720 P.2d at 159; *Commercial Carrier*, 371 So. 2d at 1015; *Jean W. v. Commonwealth*, 414 Mass. at 508–09, 610 N.E.2d at 312; *Maple v. City of Omaha*, 222 Neb. 293, 301–02, 384 N.W.2d 254, 260 (1986); *Schear v. Board of County Com'rs*, 101 N.M. 671, 676, 687 P.2d 728, 731 (1984); *Brennen*

*v. City of Eugene*, 285 Or. 401, 411, 591 P.2d 719, 724 (1979); *DeWald v. State*, 719 P.2d 643, 653 (Wyo. 1986).

As we discard the public duty rule, we are mindful of the potentially broad obligations incurred through municipal functions. Cities and towns have not been, and are not now, guarantors of public peace, safety and welfare. Our decision does not add causes of action, nor, we believe, does it significantly increase the potential liability of municipalities. Instead, we return the analysis of municipal negligence to principles which have been established previously in *Merrill v. City of Manchester*, and by statute.

■ Plaintiffs claiming municipal negligence must allege and prove the elements of negligence: "a breach of a duty of care by the defendant, which proximately causes the plaintiff's injury." *Weldy*, 128 N.H. at 330, 514 A.2d 1260. We have said that "[t]he term 'duty' serves to focus attention on the policy issues determining the scope of the relationship between the parties." *Island Shores Estates*, 136 N.H. at 304, 615 A.2d at 632. As to the duty owed by a municipality, "[t]he concept of duty is a legal one, and asks whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." *Id.*, 615 A.2d at 631 (quotations omitted). The existence of a duty under particular circumstances "depends on what risks, if any, are reasonably foreseeable." *Goodwin v. James*, 134 N.H. 579, 583, 595 A.2d 504, 507 (1991). Breach of a duty owed to a plaintiff is not actionable negligence unless the breach causes or contributes to cause the plaintiff's injury. *Murray v. Boston & Maine R.R.*, 107 N.H. 367, 374, 224 A.2d 66, 72 (1966). Causation "focuses on the mechanical sequence of events that comprises causation in fact." *Island Shores Estates*, 136 N.H. at 304, 615 A.2d at 632. When one considers municipal liability, the concepts of duty and legal causation are closely related and must be considered together. *Id.*

We expect that proof of negligence will continue to be a sufficient test of claims against cities and towns to separate worthy suits from those without merit. As has long been our preference, we leave it to the legislature to enact appropriate measures to protect municipalities, if necessary. *Merrill v. City of Manchester*, 114 N.H. at 730, 332 A.2d at 384.

In resolving the legal issue raised in this case, we have made no evaluation or determination of the sufficiency of the plaintiff's claims. The case is remanded to the superior court for further proceedings consistent with our decision.

*Remanded.*

All concurred.